**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TASHA CALLAHAN, *individually and on behalf of all others similarly situated*,

    Plaintiff,

    v.

THE PROCTER & GAMBLE COMPANY,

    Defendant.

Civil Case No. 1:23-cv-02072

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S
<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Plaintiff's Opposition Confirms That Her Theory of Deception is Implausible. ............... 2

      A.      The label of Gain is directly contrary to Plaintiff's claims.................................... 2

      B.      Plaintiff fails to plausibly allege that consumers expect "loads" to refer to a particular size of laundry load. ................................................................... 5

II.     Plaintiff's Claims Suffer from Other Defects. .................................................... 8

CONCLUSION ...................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arthur v. United Indus. Corp.*,
   2018 WL 1472500 (C.D. Cal. Mar. 23, 2018) ...........................................................................5

*Bartosiake v. Bimbo Bakeries USA, Inc.*,
   632 F. Supp. 3d 789 (N.D. Ill. 2022) ........................................................................................3

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ................................................................................................2, 3

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
   155 F. Supp. 2d 1069 (S.D. Ind.) .............................................................................................9

*Brownell v. Starbucks Coffee Co.*,
   2023 WL 4489494 (N.D.N.Y. July 12, 2023) ..........................................................................2

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ................................................................................................8, 9

*Chiappetta v. Kellogg Sales Co.*,
   2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ...............................................................................9

*Connick v. Suzuki Motor Co.*,
   174 Ill. 2d 482 (1996) ...............................................................................................................9

*Dwyer v. Allbirds, Inc.*,
   598 F. Supp. 3d 137 (S.D.N.Y. 2022) ......................................................................................6

*In re Folgers Coffee*,
   2021 WL 7004991 (W.D. Mo. Dec. 28, 2021) .........................................................................4

*Guzman v. Walmart, Inc.*,
   2023 WL 3455319 (N.D. Ill. May 15, 2023) ............................................................................2

*Lesorgen v. Mondelez Global, LLC*,
   2023 WL 3568686 (N.D. Ill. May 19, 2023) ............................................................................2

*Matthews v. Polar Corp.*,
   2023 WL 4534543 (N.D. Ill. Mar. 22, 2023) ...........................................................................3

*Matthews v. Polar Corp.*,
   No. 22-cv-649, Dkt. 35 (N.D. Ill. Apr. 6, 2023) ......................................................................2

*Norman v. N. Illinois Gas Co.*,
    2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ...............................................................4

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. App. Ct. 2014) .......................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...................................................................................4

*Pridgen v. Church & Dwight Co.*,
    2020 WL 2510517 (C.D. Cal. Mar. 2, 2020) ................................................... 4, 5, 7

*Richardson v. Edgewell Pers. Care, LLC*,
    2023 WL 1109646 (S.D.N.Y. Jan. 30, 2023) ...........................................................5

*Richburg v. Conagra Brands, Inc.*,
    2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) .............................................................6

*Rudy v. Fam. Dollar Stores, Inc.*,
    583 F. Supp. 3d 1149 (N.D. Ill. 2022) .................................................................2, 3

*Sneed v. Ferrero U.S.A., Inc.*,
    2023 WL 2019049 (N.D. Ill. Feb. 15, 2023) ........................................................3, 8

*Womick v. Kroger Co.*,
    2022 WL 673095 (S.D. Ill. Mar. 7, 2022) ...............................................................4

*Wynn v. Topco Assocs., LLC*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .............................................................7

*Zahora v. Orgain LLC*,
    2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) .........................................................6, 7

*Zarinebaf v. Champion Petfoods USA Inc.*,
    2019 WL 3555383 (N.D. Ill. July 30, 2019) ............................................................6

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act .........................................2, 6, 8, 9

## INTRODUCTION

The opposition advances an implausible theory of deception. According to Plaintiff, consumers are deceived by the phrase "32 loads" on a bottle of Gain because they expect "loads" to refer to "full units" of laundry, akin to "the number of chocolates in a box or bedrooms in a mansion." Opposition ("Opp.") at 4. In Plaintiff's case, she apparently believed that a "unit" of laundry could be a *large* or *full* load, but *not* a *medium* load—notwithstanding Gain's straightforward disclosure that a bottle contains approximately 32 "medium" loads.

That theory defies common sense. Reasonable consumers understand that laundry load sizes vary—as do the sizes of "chocolates in a box" or "bedrooms in a mansion." Opp. at 4. "32 loads" on Gain's label does not guarantee *large* loads any more than a "32-piece" box of chocolate guarantees 32 *large* pieces of chocolate. Moreover, Plaintiff fails to explain how any consumer could believe that "32 loads" refers to loads that fill the "whole useable capacity" of a consumer's washing machine when that size will necessarily vary based on the capacity of individual machines—a point that the opposition concedes. Opp. at 2–3; 8. In fact, Plaintiff's own statistics confirm that the average "load" of laundry varies significantly by consumer, which belies any suggestion that reasonable consumers have a single and common understanding of "loads." The opposition also does not dispute that Plaintiff's claims are irreconcilable with the back of Gain's label, which states that Gain "[c]ontains approximately 32 loads as measured to just below bar 1 on the cap," which is enough detergent for 32 "medium" loads of laundry. *See* Opp. at 7. That concession alone—namely, that consumers are told in plain terms that the bottle contains 32 medium loads—is fatal to Plaintiff's Complaint. For these reasons, and the additional reasons

1

below, Plaintiff's remaining claims should be dismissed. [1]

## ARGUMENT

## I.     Plaintiff's Opposition Confirms That Her Theory of Deception is Implausible.

The opposition relies on familiar arguments made in the hundreds of putative class actions Plaintiff's counsel has brought against manufacturers of household products in recent years. An overwhelming number of those cases have "exit[ed] the courthouse on motions to dismiss" for failing to plead facts sufficient to sustain a misleading advertising claim. *Matthews v. Polar Corp.*, No. 22-cv-649, Dkt. 35 (N.D. Ill. Apr. 6, 2023).[2] The same result is warranted here.

### A.     The label of Gain is directly contrary to Plaintiff's claims.

Plaintiff concedes that Gain's label discloses that "32 loads" corresponds to 32 "medium"-sized loads of laundry. *See* Opp. at 7. Nonetheless, Plaintiff argues that reasonable consumers are misled because they believe that "32 loads" means large or full loads of laundry, but *not* medium loads. *E.g.*, Compl. ¶ 33. Plaintiff's claims thus rest on the mistaken theory that P&G misled consumers into believing something that is in direct conflict with Gain's express directions.

To defend this counterintuitive outcome, Plaintiff insists that the Court should disregard the clarifying language on Gain's back label. *See* Opp. at 7 (citing *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D. Ill. 2022) (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020)). As explained in P&G's opening brief, Mot. at 7 n.3, Plaintiff's

---

[1] Plaintiff has withdrawn all of her claims except for breach of express warranty and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Opp. at 1 n.1.

[2] The Complaint, respectfully, is part and parcel with Plaintiff counsel's practice in this district of filing a "warehouse of complaints . . . that are not fit for public consumption." *Guzman v. Walmart, Inc.*, 2023 WL 3455319, at *1 (N.D. Ill. May 15, 2023). Courts have recently gone so far as to remind Plaintiff's counsel "of his obligations under Federal Rule of Civil Procedure 11," *Lesorgen v. Mondelez Global, LLC*, 2023 WL 3568686, at *5 (N.D. Ill. May 19, 2023) ("Spaghetti is best eaten, not thrown at walls."); *see also Brownell v. Starbucks Coffee Co.*, 2023 WL 4489494, at *8 (N.D.N.Y. July 12, 2023) (ordering Plaintiff's counsel to "show cause as to why this Court should not sanction him for continually filing frivolous lawsuits").

reliance on *Bell* is misplaced. *Bell* stands for the unremarkable proposition that fine-print ingredient lists do not *automatically* "immunize" an otherwise misleading product label. *Bell*, 982 F.3d. at 477; *accord Rudy* 583 F. Supp. 3d. at 1160. *Bell* actually reaffirmed that courts should consider a product's labeling *as a whole*, which in this case would extend to the clear instructions on the back label. 982 F. 3d at 477 (noting that courts should still consider "*all of the information* available to consumers") (italics added)). Courts in this district have consistently rejected the argument advanced by Plaintiff, holding instead that disclosures such as an "accurate ingredient list [are] one piece of 'all the information available to consumers' and [are] therefore relevant to determining whether reasonable consumers would be misled." *Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *3 (N.D. Ill. Feb. 15, 2023); *see also* Mot. at 6 (collecting cases).

More fundamentally, this case is far afield from the fine-print disclaimers at issue in *Bell* and *Rudy* because "32 loads" is not a misrepresentation at all. The concern motivating *Bell* was that a label could "hook[] a consumer with a misrepresentation" on a front label, "only to take it away" with a disclaimer elsewhere on a package. *Matthews v. Polar Corp.,* 2023 WL 4534543, at *2 n.1 (N.D. Ill. Mar. 22, 2023). Here, "32 loads" is not susceptible to a particular meaning such that reasonable consumers might rely on Gain's front label alone. Mot. at 7; Opp. at 8 (conceding that load size, and in turn, the "total yield" of a detergent, necessarily varies). As Plaintiff's own data illustrate, reasonable consumers understand that laundry load sizes vary based on factors such as machine capacity, family size, and individual preference. *See infra* at 6–7. In contrast, plaintiffs in *Bell* had "conducted consumer surveys showing that 85 to 95 percent of consumers" understood the front label's "100% Grated Parmesan Cheese" representation to mean that the product would contain only cheese. *Bell*, 982 F.3d at 480; *see also Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 795 (N.D. Ill. 2022) (distinguishing *Bell*).

Plaintiff's theory is also consistent with *Pridgen v. Church & Dwight Co.*, 2020 WL 2510517 (C.D. Cal. Mar. 2, 2020), which dismissed a virtually identical false advertising claim against OxiClean detergent because the back label disclosed that "65 loads" corresponds to "65 'regular loads' of laundry," as measured by "line 1 on the scoop." *Id.* at *3. Plaintiff argues that *Pridgen* is distinguishable because the "front label referred to stain removal and not regular washing," Opp. at 5, but that is a distinction without a difference. If anything, the case for dismissal here is even *stronger* because the OxiClean label advertised "stain removal," but a single "load" of OxiClean could not provide the advertised stain removal benefit. *Pridgen*, 2020 WL 2510517, at *1 (noting that "the scoop must be filled to Line 2 or above to remove stains"). Here, by contrast, the Complaint does not allege that Gain is unable to provide 32 medium washes.[3]

Since Plaintiff does not seriously dispute that Gain provides sufficient detergent for 32 medium-sized loads of laundry, the opposition's citations to *In re Folgers Coffee*, 2021 WL 7004991 (W.D. Mo. Dec. 28, 2021) and *Womick v. Kroger Co.*, 2022 WL 673095, at *1 (S.D. Ill. Mar. 7, 2022) are misplaced. Opp. at 5. In those cases, plaintiffs alleged that defendants' "up to" representations on instant coffee were false "even when following [the product's] brewing instructions." *Womick*, 2022 WL 673095, at *1; *In re Folgers Coffee*, 2021 WL 7004991, at *8 (sustaining claims where plaintiffs alleged it was "*impossible* to *ever* brew anywhere near the

---

[3] Pressed to concede that the term "load" is not subject to a particular meaning because laundry load sizes vary by machine capacity and other factors, the opposition suggests, for the first time, that the label is flawed because "its packaging does not consider this factor." Opp. at 8. In fact, this is not true, as the back label does distinguish between conventional machines and high-capacity *h.e.* machines. Compl. ¶ 14. More to the point, Plaintiff cannot simultaneously concede that the term "load" is inherently ambiguous and also assert that a reasonable consumer would expect it to mean "full" or "large" loads despite the labeling. Finally, to the extent this new assertion is an effort to amend the Complaint in some fashion, it is "well established" that "a plaintiff may not amend her complaint through argument in an opposition brief." *Norman v. N. Illinois Gas Co.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)).

number of servings on the Labels while simultaneously following the Instructions") (italics added).

Unable to distinguish *Pridgen*, Plaintiff complains that consumers must "navigate[] hundreds of words" to find Gain's disclosure on the container's back label. Yet as is evident from Plaintiff's own allegations, Compl. ¶ 14, the dosing information is plainly visible exactly where a reasonable consumer would think to look: alongside the product's directions, located at the very top of Gain's back label. Gain's label is a far cry from the cases Plaintiff cites involving allegedly misleading back labels.[4] Consumers are further put on notice because a diamond symbol "appended to the [32 loads] representation is plainly visible on the front of the label and would lead a reasonable consumer 'to another statement' carrying a corresponding [diamond] elsewhere on the label." *Richardson v. Edgewell Pers. Care, LLC*, 2023 WL 1109646, at *6 (S.D.N.Y. Jan. 30, 2023). Finally, it makes no difference that Plaintiff herself did not read Gain's back label, since the relevant question is whether a *reasonable consumer* can be expected to consider Gain's packaging as a whole. *Id.* at *6.

Because Gain's packaging dispels any expectation that "32 loads" refers to "full or large" loads rather than *medium* loads of laundry, Plaintiff's claims should be dismissed.

### B. Plaintiff fails to plausibly allege that consumers expect "loads" to refer to a particular size of laundry load.

Even if this Court were to ignore the disclosures on the back label, Plaintiff fails to plausibly allege that "32 loads" is susceptible to a particular meaning such that a reasonable consumer would believe Gain's label promises 32 large or full loads.

---

[4] For example, in *Arthur v. United Indus. Corp.*, 2018 WL 1472500 (C.D. Cal. Mar. 23, 2018), the court concluded that a consumer might be confused by the product's back label in part based on directly conflicting statements on the packaging. *Id.* at *7 ("The rear label of the 32–fluid ounce Concentrate bottle allegedly advertises that it 'makes up to 20 gallons,' while its front label allegedly states that it 'makes up to 10 gallons.'").

Plaintiff's first response is that the question of how reasonable consumers interpret "loads" cannot be resolved at the pleadings stage. Opp. at 3. That is incorrect. It is well established that "[a] court may dismiss an ICFA claim at the pleading stage if the statement at issue is not misleading as a matter of law. *Zahora v. Orgain LLC*, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021); *see also Zarinebaf v. Champion Petfoods USA Inc.*, 2019 WL 3555383, at *6 (N.D. Ill. July 30, 2019*)* ("[C]ourts routinely analyze whether statements like these are deceptive as a matter of law under the ICFA."). Moreover, Plaintiff bears the burden of plausibly alleging that "a *significant portion* of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled." *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023) (italics added). Here, there is nothing besides Plaintiff's "say-so" to indicate that any consumer—let alone a "significant portion of the general consuming public"— would understand the phrase "32 loads" to have a particular meaning.

As a preliminary matter, the opposition remains unclear about what size of laundry loads *Plaintiff* expected—let alone what the majority of consumers expect "load" to mean. *See* Mot. at 2 (noting that Plaintiff alternates between whether she expected "full" or "large" loads of laundry). For example, Plaintiff still has not even clarified whether she *owns* a high-efficiency machine such that she *even could* run "h.e. full" loads, which correspond to Bar 5 on Gain's label.

With respect to the average consumer, Plaintiff's assorted statistics only reinforce that laundry load habits vary considerably. *See* Mot at 9. Indeed, Plaintiff's own studies confirm that *more* consumers prefer medium loads over extra-large loads. *Id.* Although the facts alleged suggest North American consumers have some preference for running larger loads over medium loads, the Complaint contains zero factual support for the idea that consumers therefore interpret "loads" to actually mean "large" or "full" loads. *See also, e.g.*, *Dwyer v. Allbirds, Inc.*, 598 F.

Supp. 3d 137, 150 (S.D.N.Y. 2022) ("That Plaintiff . . . believe[s] that Defendant should use a different method of measuring the Product's carbon footprint does not plausibly suggest that what Defendant in fact says is materially misleading.").[5]

Instead, the opposition falls back on the idea that "the number of wash loads serves as a more accurate diagnostic indicator of product value compared to how many ounces or liters it provides." Opp. at 3. P&G agrees, which is precisely why Gain's label includes a load count measurement. However, this uncontroversial point does not actually support Plaintiff's theory that consumers therefore expect "32 loads" to mean only full, or perhaps large, loads—just as a "32-piece" box of chocolate does not indicate anything about the precise size of those chocolates. *See, e.g.*, *Zahora v. Orgain LLC*, 2021 WL 5140504, at \*4 (N.D. Ill. Nov. 4, 2021) ("A reasonable consumer would not read into the label what is simply not there"). And even accepting the idea that consumers expect "loads" to correspond to "full units," the opposition concedes that laundry machine sizes vary, and thus so does the "total yield" of a laundry product. Opp. at 8. Therefore, no reasonable consumer could believe that she will necessary obtain 32 large or full-size loads from Gain. *See Pridgen*, 2020 WL 2510517, at \*3 ("[A] reasonable consumer . . . would not think that, no matter how much OxiClean they used for a given task, the contents of the container would nevertheless stretch to accommodate 65 uses.").

---

[5] In an attempt to overcome the shortcomings of her assorted statistics, Plaintiff misleadingly quotes from Department of Energy ("DOE") regulations for the contention that "washing machine manufacturers generally instruct users to load them 'to the point that the clothes container is loosely filled.'" Opp. at 4. That is wrong. The DOE stated that "[i]n considering *maximum* test load size, . . . instructions generally included a notation that the clothes container could, and for some cycles, should, be loaded to the point that the clothes container is loosely filled." *See* 77 Fed. Reg. 13,888, 13,911 (Mar. 7, 2012). The DOE went on to establish *minimum* test load sizes because it noted that "consumers may desire to wash only a few articles of clothing regardless of the size of their clothes washer." *Id.* In any event, Plaintiff "does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at \*3 (S.D.N.Y. Jan. 19, 2021).

Finally, the opposition objects to P&G's citations to lawsuits filed by Plaintiff's counsel against other detergent manufacturers, which indicate that basing a product's load count on a medium load is a common industry practice. The opposition incorrectly states that P&G offers no authority for the proposition that this context is relevant in determining whether a reasonable consumer would be deceived by Gain's label. *See* Mot. at 10 (citing *Sneed*, 2023 WL 2019049, at *3 (taking into account "the existence of other candies made with artificial cream and advertised as 'cream'" in dismissing plaintiff's claim for failure to plausibly allege that defendant's "cream" representation was misleading)). But more significantly, Plaintiff ignores that she *herself* alleged that such information is relevant to whether Gain's label is deceptive by arguing that consumers expect information presented in the "default units" for a particular product. *See, e.g.*, Compl. ¶ 7 (citing article by Lembregts et al. explaining that "years constitutes [consumers'] default unit for a warranty," for example, since "consumers are probably more accustomed to seeing warranty information expressed in years rather than in days").

Since Plaintiff has failed to plausibly allege that a reasonable consumer would expect that Gain's "32 loads" representation promises 32 *large* or *full* loads, her claims must be dismissed.

## II.    Plaintiff's Claims Suffer from Other Defects.

**ICFA Claim.** The opposition does not dispute that Plaintiff must plausibly allege that she suffered *actual damages* to sustain a claim under the ICFA. Opp. at 9. The Complaint's theory of injury is that Gain is sold at a "premium price" compared to other products because its represented load count is based on a medium, rather than a large or full, load of laundry. *See, e.g.*, Compl. ¶ 36. Yet Plaintiff has alleged zero facts indicating that other laundry products base their load representations on full or large loads of laundry such that Gain is priced "higher than similar products represented in a non-misleading way." *See Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 739 (7th Cir. 2014) (no actual damages where Plaintiff asserted without "factual support

or justification" that "he could have shopped around and found the same shirts for a lower price"); *see also* Mot. at 2 (collecting other cases by Plaintiff's counsel demonstrating common industry practice of basing load representations on a medium-sized load). Plaintiff's theory of injury is too "speculative and conclusory to prove actual damages." *Camasta*, 761 F.3d at 739.; *see also Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1034 (Ill. App. Ct. 2014) ("Damages [under the ICFA] may not be predicated on mere speculation, hypothesis, conjecture or whim.").

**Express Warranty Claim.** As explained in P&G's opening brief, Plaintiff cannot sustain her express warranty claim because she fails to allege that Gain did not comport with the statements on its packaging. Mot. at 12. Regardless, Plaintiff's express warranty claim fails for lack of pre-suit notice. The opposition does not dispute that Plaintiff's warranty claim is subject to a notice requirement. Opp. at 12. Plaintiff argues, however, that "filling this action on March 31, 2023" provided sufficient notice of that claim. That argument has been squarely rejected under Illinois law. *See, e.g.*, *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022). Indeed, the only case that the opposition cites in support of its pre-suit notice argument expressly noted that the Illinois Supreme Court had reached the *opposite* conclusion. *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1110 (S.D. Ind.) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 493 (1996)). The only time that "filing a complaint" may serve as notice under this requirement is when "a consumer plaintiff" has "suffer[ed] a personal injury." *Connick*, 675 N.E.2d at 590 (Ill. 1996). That is not the case here.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint with prejudice.

Dated: September 13, 2023                    Respectfully Submitted,

                                             */s/ P. Russell Perdew*

                                             P. Russell Perdew
                                             Alyssa M. Gregory
                                             LOCKE LORD LLP
                                             111 S. Wacker Drive
                                             Chicago, IL 60606
                                             Telephone: (312) 443-1712 (P. Perdew)
                                             Fax: (312) 896-6712 (P. Perdew)
                                             rperdew@lockelord.com
                                             alyssa.gregory@lockelord.com

                                             Andrew Stanner (*pro hac vice
                                             forthcoming*)
                                             COVINGTON & BURLING LLP
                                             One City Center
                                             850 Tenth Street, NW
                                             Washington, DC 20001
                                             Telephone: (202) 662-5261
                                             astanner@cov.com

                                             *Counsel for Defendant*
                                             *The Procter & Gamble Company*