UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TASHA CALLAHAN, Individually and On Behalf Of All Others Similarly Situated,<br>        Plaintiffs<br><br>v.<br><br>THE PROCTOR & GAMBLE COMPANY,<br>        Defendant | No. 23 CV 2072<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendant's motion to dismiss for failure to state a claim [16] is granted. Unless the plaintiff files, by July 1, 2024, an amended complaint stating at least one viable claim, the Court will enter judgment dismissing her complaint with prejudice.

### STATEMENT[1]

Plaintiff Tasha Callahan, on behalf of herself and similarly situated individuals, brings a laundry list of claims against Defendant Proctor & Gamble Company ("P&G"), many of which have come out in the wash. (R. 1; R. 21-1 at 6 n.1.)[2] Remaining are Callahan's claims that P&G has violated various state consumer fraud statutes by its labeling of Gain laundry detergent ("the Product"). (R. 1 ¶¶ 52–58.)[3] Callahan's claims center on the Product's front label, pictured below:



---

[1] For purposes of the pending motion, the Court accepts all of the plaintiff's factual allegations as true and draws all reasonable inferences in their favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[3] The Court has jurisdiction over these claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

(*Id.* ¶ 1; R. 16 at 8.) As the photos depict, the Product's front label includes the statement "32 loads" directly beside a diamond "◊". (R. 1 ¶ 1.) Callahan asserts that a majority of consumers reasonably understand "32 loads ◊" as a guarantee that the Product contains sufficient detergent for 32 full and/or large loads. (*Id.* ¶ 33.)

Callahan further claims that reasonable consumers are unlikely to read the Product's back label, which explains that the Product contains sufficient detergent for 32 "medium-sized" loads. (*Id.* ¶¶ 12–13.) Photos of the Product's back label from the complaint are reproduced below:



(*Id.* ¶ 14.) Callahan brings her claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq.*, and the similar consumer fraud statutes of other states. (R. 1 ¶¶ 52–58.) P&G moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 16.)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a claim upon which relief may be granted "'requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While all well-pled facts are taken as true and viewed in a light most favorable to the plaintiff," *id.*, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 2021).

The ICFA, like the Federal Trade Commission Act, "broadly prohibit[s] unfair business practices, including deceptive advertising." *Bell v. Publix Super Markets,*

*Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta*, 761 F.3d at 739 (citation omitted). Further, because Callahan asserts that the Product's labeling is deceptive, (*see* R. 1 at ¶¶ 52–58), her claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 738 (7th Cir. 2019). Callahan thus must allege the "who, what, when, where, and how" of the alleged fraud. *Id.*

Labeling is deceptive "if it creates a likelihood of deception or has the capacity to deceive.*" Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard, which focuses on "how real consumers understand and react to the advertising" in this analysis. *Bell*, 982 F.3d at 476. The question at the pleading stage is whether the complaint, considering "all the information available to consumers and the context in which that information is provided and used" plausibly alleges that a significant portion of consumers, acting reasonably under the circumstances, could be misled. *Id.* at 474–75. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* at 477.

Callahan claims that P&G deceptively advertises the Product as being sufficient for 32 loads of laundry using "the whole usable capacity of [a] washing machine." (R.1 ¶ 21.) In other words, she alleges that the Product is advertised as being sufficient for 32 "full" or "large" loads of laundry. (*Id.* ¶¶ 9, 19.) But the complaint makes no allegation that there is insufficient detergent inside the Product for 32 medium loads of laundry as the back label discloses. Accordingly, this is not a case of literal falsity; when an alleged deceptive statement is literally true "a plaintiff must prove that the statement 'implicitly convey[s] a false impression, [is] misleading in context, or [is] likely to deceive consumers.'" *Bell*, 982 F.3d at 479.

P&G argues that dismissal is warranted for two reasons. First, P&G asserts that Callahan's claims are barred by clear disclosures on Gain's label. (R. 16 at 11–12.) Second, P&G argues that the complaint lacks facts to plausibly infer that a majority of consumers understand "32 loads ◊" to mean 32 large and/or full loads. (*Id.* at 13.) Callahan responds that "32 loads ◊" is implicitly false because reasonable consumers expect that it means 32 large and/or full loads. (R. 21-1 at 8–11.) She derives her view from a scholarly article that concluded 65 percent of North Americans prefer doing large loads of laundry. (*See* R. 1 ¶ 15.)[4] Callahan also asserts that no reasonable

---

[4] The complaint references various studies and articles. (*See* R. 1 ¶¶ 15–20.) Although Callahan did not attach these articles to her complaint, the Court is free "to consider any facts set forth in the complaint that undermine the plaintiff's claim," including "documents

3

consumer can be expected to review information on the Product's back label. (R. 21-1 at 11–13.)

The Court agrees with P&G that the complaint fails to state an ICFA claim. First, the complaint shows that the Product's back label accurately discloses that the Product contains enough for 32 medium loads of laundry. *See generally McCormick v. City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000) (noting "a plaintiff may plead herself out of court by pleading facts that undermine the allegations set forth in her complaint"). Back label disclosures and disclaimers are relevant in determining whether labeling is deceptive. *Bell*, 982 F.3d at 476; *see, e.g., Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 784 (N.D. Ill. 2023) (granting motion to dismiss in part because the product included an accurate list of ingredients). Callahan argues that it is plausible that the back label's chart and corresponding information would not be read by a reasonable consumer for three reasons; none are persuasive.

First, Callahan argues that the label's disclaimer is deceptive since, as she contends, the diamond symbol drawing the consumer's attention to the back label is visible "only [after] a much closer inspection." (R. 21-1 at 11.) However, "a court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). Callahan's claim is implausible because the photos of the phrase "32 loads ◊" on the Product show the diamond prominently placed directly beside the word "loads." (*See* R. 1 ¶ 1; R. 16 at 8.)

Similarly, Callahan claims that the back label disclosure can only be found after navigating "hundreds of words, including warnings, ingredients, logos and icons, in [very small] sizes, fonts, colors[,] and languages." (R. 21-1 at 12) (alteration in brief).) Such, however, is belied by the image she included in the complaint showing the chart and corresponding information prominently placed at the top of the back label as the first text available to consumers. (R. 1 ¶ 14.)

Lastly, Callahan claims the "[c]onsumers must further analyze the graphics containing the instructions" which is a "tedious task" that reasonable consumers are unlikely to do. (*Id.*) The Court struggles to see what makes reading "Just Below Bar 1" and "Just Below Bar 3" so tedious. Nevertheless, the Court need not accept unsupported factual allegations, and even accepting that Callahan might find such a task tedious, the complaint supplies no basis to infer that a majority of consumers would also so conclude. *Bilek Fed. Ins. Co.*, 8 F.4th at 586.

---

referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). These articles are central to Callahan's claim because they are her only support (aside from subjective interpretation of the label) for her theory that a majority of consumers would think "32 loads ◊" refers to Product sufficient for 32 loads tak[ing] advantage of the whole useable capacity of their washing machines," *i.e.*, 32 "full" and/or "large" loads of laundry. (R. 1 ¶¶ 9, 21–22.)

The complaint also fails to state a claim because it does not support an inference that a significant portion of consumers agree with Callahan's subjective interpretation of the label. Even accepting as true that sixty-five percent of North Americans *prefer* to do large loads of laundry, the complaint fails to support a reasonable inference that a majority of consumers would be misled to believe that a statement not referencing load size implicitly guarantees sufficient detergent for a specific load size. The complaint's reliance upon studies of household laundry habits and recommendations by laundry experts also misses the mark. These articles offer no basis to infer that customers think a "load" of laundry means a large or full load, such as consumer surveys. (*See* R. 1 at ¶¶ 15–20); *compare Bell*, 982 F.3d at 480 (reversing grant of motion to dismiss where the plaintiff alleged consumer surveys supported her subjective interpretation of the deceptive meaning of the advertisement) *with*, *Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *5 (N.D. Ill. Dec. 9, 2022) (granting motion to dismiss where the "plaintiff provide[d] only conclusory factual allegations to suggest that unspecified 'consumers' agree with her subjective interpretation of the label").

Moreover, Callahan's assumption that a majority of consumers have uniform expectations as to the amount of detergent needed to wash a load of laundry is undermined by the complaint itself. First, as Callahan herself acknowledges, some consumers do laundry at home and others at a laundromat using larger capacity machines. (R. 1 ¶ 53; R. 21-1 at 13.) This means that the amount of the Product necessary to clean a load of laundry would vary greatly between consumers depending on their type of washing machine. (*See id.*) The complaint also inconsistently switches between asserting that "32 loads ◊" implies "32 full loads" and/or "32 large loads" of laundry. (*See* R. 1 ¶¶ 9, 14–16.) Callahan's justification for this doublespeak is that "a full amount of laundry in a smaller machine can be a large laundry amount in a larger machine." (R. 21-1 at 13.) Again, though, this allegation only serves to show the variability of laundry practices among consumers.

In sum, the complaint itself shows that consumers can readily and accurately resolve any question regarding loads' meaning by referencing P&G's disclosure on the back label. The complaint also fails to plausibly allege that a significant portion of consumers agree with Callahan's subjective interpretation of the label. The ICFA claim is therefore dismissed.

5

The Court also grants P&G's motion to dismiss Callahan's claim that the Product's labeling violates other consumer fraud state statutes. (R. 1 ¶¶ 56–58.) According to Callahan, all of these statues similarly prohibit "the use of . . . deceptive business practices in the conduct of commerce." (*Id.* ¶ 56.) "[B]ecause the Product's labeling is not . . . deceptive as a matter of law," these claims fail. *Jackson v. Kraft Heinz Foods Co.*, No. 21 C 5219, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022). For all of the foregoing reasons, P&G's motion to dismiss (R. 16) is granted.

Date: June 10, 2024

JEREMY C. DANIEL
United States District Judge